**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**


**MATTIE YOUNG AS ADMINISTRATRIX OF**
**THE ESTATE OF MATTIE SUE DELANEY**                                          **PLAINTIFF**


**v.**                                          **CIVIL ACTION NO. 4:11CV002-B-A**


**SECRETARY OF HEALTH AND HUMAN SERVICES**                                          **DEFENDANT**


## MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of a final

decision of the Secretary of the Department of Health and Human Services. Because both

parties have consented to have a magistrate judge conduct all the proceedings in this case as

provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the

accompanying final judgment.


## I. FACTUAL AND PROCEDURAL HISTORY

As conservator of her mother's estate, plaintiff filed a nursing home negligence suit

against Greenwood Health and Rehabilitation Center ("Nursing Home") on August 30, 2004,

while her mother was still a resident of Nursing Home. *Delaney v. Greenwood Health and*

*Rehabilitation Center*, 4:04cv340, Docket 1, Ex. 2 (N.D. Miss.). The suit alleged that Nursing

Home's negligent care resulted in a decubitus ulcer and the amputation of plaintiff's mother's

leg on August 24, 2002. On December 21, 2007, plaintiff settled the suit for $100,000.00 on the

third day of trial. Docket 6, p. 72-78.

Before she settled the case, plaintiff requested Medicare's conditional payment in a letter dated October 19, 2007. *Id.* at 60. Fourteen months later, after receiving no response from Medicare, plaintiff again requested Medicare's conditional payment amount on December 3, 2008. *Id.* at 59. Three months later, plaintiff received Medicare's demand, which indicated Medicare had paid $74,095.28 on behalf of plaintiff's mother and had agreed to reduce the lien amount to $26,004.67. *Id.* at 79-84. Plaintiff requested a redetermination of Medicare's initial lien figures on March 26, 2009, and advised Medicare that the nursing home litigation was not a wrongful death case, but instead was only related to an amputation that occurred on August 24, 2002. Docket 6, p. 186-87. The request for redetermination indicated that the only related services that should be the subject of Medicare's lien were those of Dr. Payne, Dr. Bradshaw, and Greenwood Leflore Hospital. *Id.* In support of her claim that the claimed lien amount included charges for unrelated medical expenses, plaintiff forwarded to Medicare a document summarizing the related payments that Medicare had made. *Id.* at 188. On May 26, 2009, Medicare issued a Redetermination Decision acknowledging that unrelated charges had been included in the initial lien amount; it agreed to reduce its lien, after the procurement costs were calculated, to $11,128.16, plus $421.96 in interest. Docket 6, p. 165-66. On November 11, 2009, plaintiff again appealed Medicare's decision and attached a 24-page summary of all related and unrelated charges in support of her contention that the related charges totaled only $12,142.61, for a final lien amount of $4,249.92 after procurement costs were calculated and deducted. *Id.* at 159.

On January 4, 2010, Medicare faxed correspondence to plaintiff's counsel requesting support for her claim that charges unrelated to the settlement were included in the lien amount;

the request allowed plaintiff five business days to provide the requested records. Docket 6, p. 55. Eight business days later, on January 14, 2010, Medicare issued an unfavorable Appeal Decision based upon the fact that "the documentation submitted was insufficient to substantiate that there were any unrelated charges on the Medicare lien." *Id.* at 162. Again, plaintiff appealed the agency's decision on February 4, 2010, and an Administrative Law Judge held a hearing on the appeal on April 12, 2010. *Id.* at 47-48, 190-211. The ALJ issued an unfavorable decision on May 6, 2010, and the Medicare Appeals Council similarly issued an unfavorable decision on November 8, 2010, finding that plaintiff failed to establish by a preponderance of the evidence that any unrelated charges had been included in the lien. *Id.* at 20-25, 3-8. The plaintiff timely filed the instant appeal from the Secretary's most recent decision, and it is now ripe for review. On appeal to this court plaintiff continues to challenge the charges that were included in the lien, as well as the attorney's fees that were considered in calculating the procurement costs.

## II. STANDARD OF REVIEW

Because Medicare benefits review cases and disability benefits review cases derive from the same source, § 405(g), both are governed by the same legal standards. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). This court's review of the Secretary's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Secretary, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir.1990). Substantial evidence has been defined as

"more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)).  This court may not overturn the Secretary's decision if it is supported by substantial evidence, that is, "more than a mere scintilla," and correctly applied the law.  *Morris*, 207 F.3d at 745; *Anthony*, 954 F.2d at 292.

Conflicts in the evidence are for the Secretary to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  The court may not re-weigh the

evidence, try the case de novo, or substitute its own judgment for that of the Secretary, even if it finds that the evidence preponderates against the Secretary's decision.  *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475.  If the Secretary's decision is supported by the evidence, then it is conclusive and must be upheld.  *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

Substantial evidence is evidence that a reasonable mind would accept as adequate to support the decision.  *Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993), citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.ct. 1420, 1427, 28 L.Ed.2d 842 (1971).  Where substantial evidence supports the administrative finding, the court may then only review whether the ALJ applied the proper legal standards and conducted the proceedings in conformity with the applicable statutes and regulations.  *Hernandez v. Heckler*, 704 F.2d 857, 859 (5th Cir. 1983).  Of course, this standard of review is not a rubber stamp for the Secretary's decision.  It involves more than a basic search for evidence supporting the findings of the Secretary.  The court must

4

scrutinize the record and take into account whatever fairly detracts from the substantiality of

evidence supporting said findings.  *Austin v. Shalala*, 994 F.2d at 1174, *citing Tome v.Schweiker*,

724 F.2d 711, 713 (8th Cir. 1984).


### III. DISCUSSION

**A.  Whether the ALJ's opinion was supported by substantial evidence.**

After a hearing on this matter, it is clear that the parties are before the court because at

every step of this case, the Secretary failed to examine the real issues before it.  Plaintiff's

primary argument is that a number of charges for which Medicare seeks reimbursement are

wholly unrelated to the events during plaintiff's mother's stay at the Nursing Home that resulted

in amputation of her leg, and these charges therefore cannot be collected from the settlement

proceeds of a lawsuit that was for *damages sustained as a result of that incident only*.  The

damages sustained were contained and discrete.  Medical charges for later medical care for other

conditions were simply not the subject of the lawsuit which gave rise to the settlement proceeds.

In an attempt to demonstrate this point, plaintiff's attorney prepared a list entitled

"Summary of Related and Unrelated Charges," designating which medical charges on the

Medicare billing statement were related to the stay in Greenwood.  Docket #6, p. 203.  Plaintiff's

counsel repeatedly advised Medicare that its lien included charges unrelated to the amputation of

the leg, such as treatment for cerebral vascular disease, hypertension, etc. – conditions from

which plaintiff's mother suffered before she was ever admitted to the nursing home and were

clearly not due to any neglect that occurred at the nursing home.  However, at no point during

the appeals process did the Secretary, the ALJ or the Appeals Council take the time to review the

Complaint or any documentation relating to the underlying civil case to discover that the civil litigation was not a wrongful death case, but was a negligence claim concerning care that resulted in plaintiff's mother's leg amputation. Instead, both the ALJ and the Medicare Appeals Council took the position that the plaintiff bears the burden of providing evidence that Medicare's demand included unrelated expenses. In his opinion, the ALJ stated that because the plaintiff failed to provide documentation to support her argument that unrelated expenses were included in the demand, "the [plaintiff] has failed to carry [her] burden of proof by a preponderance of the evidence." Docket 6, p. 18.

Both the ALJ and Medicare Appeals Council have misstated the law. "Medicare bear[s] the ultimate burden of justifying the amounts it seeks in reimbursement." *Urso v. Thompson*, 309 F. Supp. 2d 253, 260 (D. Conn. 2004). The court explained that

> recipients of Medicare benefits . . . are perhaps in a better position as an initial matter to evaluate the reimbursement claim and to assess whether a payment made by Medicare was truly for an item or service that was ultimately paid by the primary plan. But even if a Medicare recipient had the initial burden of making a *prima facie* case that Medicare's reimbursement request were overinclusive, it is the Secretary who should bear the ultimate burden of persuasion on this issue, since it is the Secretary who is seeking reimbursement. A Medicare subscriber . . . should not bear the burden of proving a negative." *Urso*, 309 F. Supp. 2d at 260.

The Secretary erred at all levels of this matter. First, the Medicare Secondary Recovery Contractor (MSRC) who believed that plaintiff's mother's medical records were necessary to determine whether the included expenses were related[1] could have obtained plaintiff's records on

---

[1]Had the MSRC simply reviewed plaintiff's complaint, it would have discovered that suit was filed years before plaintiff's mother passed away and was not a wrongful death claim. Further, the MSRC should have been able to tell that the claimed injuries related to the amputation of the mother's leg without additional records. The MSRC easily could have eliminated the expenses for hypertension, cerebral vascular disease, etc if it had simply reviewed

its own, but chose not to do so. Instead, it relied upon plaintiff to provide them, and when she either did not provide the records or was unable to do so, Medicare made no attempt to fulfill its burden despite insistence that its claim was excessive. This was error. The MSRC should have requested the medical records from the medical providers if it felt they were necessary to make a proper determination as to the related expenses.[2]

Further down the line, both the ALJ and the Medicare Appeals Council could have requested plaintiff's mother's medical records on their own if they believed the records were critical to a correct determination. 42 C.F.R. § 405.1122(d), (e) and (f). And if the Medicare Appeals Council did not wish to obtain the records on its own, it should have remanded the case to the ALJ to obtain the additional evidence and issue a new decision. 42 C.F.R. § 405.1122(a) and (b); 42 C.F.R. § 1126(a) and (b).

It is abundantly clear that the Secretary did not discharge her burden in this case. Plaintiff provided the evidence she had and gave a good faith estimate from her documentation that only one-fourth of Medicare's claimed reimbursement related to expenses that had to do with the claims pursued in the Complaint and recovered for in the civil case settlement. There can be no doubt that expenses incurred for treatment of hypertension were not related to the decubitus ulcer that plaintiff's mother developed while in the Nursing Home and which led to the amputation. Plaintiff's mother had hypertension before she was admitted to the Nursing Home and in the years following the amputation.

---

the Complaint. However, Medicare and the Secretary have failed at every level to examine the case properly instead of just accepting the opinion of the former examiner.

[2]This is an issue aside from the question of whether giving plaintiff only five business days to provide copies of her medical records can in any sense be deemed reasonable.

When plaintiff advised Medicare that unrelated expenses were included in the conditional payment demand and provided the documentation that she had to support her claim, the Secretary was required to provide a justification for each payment that the Secretary believed was related to the decubitus ulcer and resulting amputation. It is undisputed that the Secretary never made such a showing, and the ALJ never required the Secretary to do so. The ALJ followed the lead of the Secretary and every examiner of plaintiff's claim at every level up to that point and hung his hat on the fact that plaintiff had not provided medical records relating to every medical expense the Secretary claimed was related.

The ALJ erred as a matter of law in placing the burden of proof on plaintiff. The ALJ's determination of the amount of reimbursement is not supported by substantial evidence in the record. Either the ALJ or the Medicare Appeals Council should have examined the file more closely to determine that many of the claimed expenses are obviously unrelated. If in fact the medical records are necessary to make a determination as to the remaining claimed expenses, the ALJ and the Medicare Appeals Council have the statutory authority to request them. The undersigned holds that the decision of the Commissioner should be remanded for further consideration of whether the claimed expenses are related. If the Secretary needs additional evidence, it has the statutory authority to obtain such evidence via subpoena from the medical providers; failing that, the lack of substantial evidence will continue to be a fatal flaw in this case.

## IV. CONCLUSION

After a review of the evidence presented in the briefs and during the hearing, this court is

of the opinion that the ALJ's opinion was not supported by substantial evidence and must be remanded.  The Secretary failed to meet its burden of proof.  A separate judgment in accordance with this Memorandum Opinion will issue this date.

SO ORDERED, this, the 3rd day of February, 2012.


_/s/ S. Allan Alexander_____
UNITED STATES MAGISTRATE JUDGE